## Tack's Estate

*Edward P. Loughran, John W. Speckman, T. Harry Rowland* and *James C. Crumlish,* for exceptants.

*Gilbert Cassidy, Jr.,* and *Edward S. Morris,* contra.

KLEIN, J., April 9, 1936.—The question raised by this appeal is whether bonds issued by the Delaware River Joint Commission, forming part of the estate of a decedent who died a resident of the Commonwealth of Pennsylvania, are subject to inheritance tax under the provisions of the Act of June 20, 1919, P. L. 521, as amended.

Appellant's claim for exemption is based upon the following use of the word "transfer" in article XI of the Act of June 12, 1931, P. L. 575:

". . . and the bonds or other securities or obligations issued by the commission, *their transfer* and the income therefrom (including any profits made on the sale thereof), shall, at all times, be free from taxation within the Commonwealth of Pennsylvania and the State of New Jersey". (Italics ours).

Our decision must, therefore, depend upon the meaning of the word "transfer" as used in this act. The learned hearing judge, after a careful analysis of the problem, concluded that the General Assembly intended it to apply only to an inter-vivos conveyance of title from one person to another and not to the passage of title by will or by operation of the laws of intestacy. He therefore held that the bonds were taxable. With this conclusion we agree.

The word "transfer" is not defined in the act under consideration. In this situation the courts have established a rule of construction to be applied in arriving at the legislative intention as to the meaning to be ascribed to the word in question. This rule is that effect must be given to the popular conception of the word used, or, expressed in another way, the word is to be given its ordinary signification: See Commonwealth v. Lowry-Rodgers Co., 279 Pa. 361 (1924), and Commonwealth v. Sunbeam Water Co., 284 Pa. 180 (1925). We consider that the ordinary use of the word "transfer" does not permit of the meaning advanced by the appellant in this case.

The legal signification of the word is well defined in 3 Bouvier's Law Dictionary (Rawle's 3d rev.) 3308 as follows: "Transfer. The act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter." This definition has been frequently quoted with approval in other jurisdictions. See for example, Sawyer v. Sander-

son et al., 113 Mo. App. 233, 88 S. W. 151; Noble v. Fort Smith Wholesale Grocery Co., 34 Okla. 662, 127 Pac. 14.

A problem somewhat similar to the present one was presented to the Appellate Division of the Supreme Court of New York in In re Starbuck, 223 App. Div. 844, 228 N. Y. Supp. 174 (1928). In that case the court construed the use of the word "transfer" in section 66 of the New York Stock Corporation Law, which provided that the directors of a corporation may refuse to consent to a transfer of shares of stock until the shareholder's indebtedness is paid, provided that a copy of the statute is printed on the shareholder's certificate. The court held that the word "transfer" could not be construed to extend to a change of title created by operation of law, as in the case of passage of title by virtue of the death of the owner of the shares.

Without some special language making such an intention clear, we do not consider that the legislature, in using the word "transfer" in the Act of 1931, supra, contemplated the passage of title to property by will or by the laws of intestacy.

In Commonwealth v. Cover, 29 Pa. Superior Ct. 409 (1905), affirmed by the Supreme Court in a per curiam opinion reported in 215 Pa. 556 (1906), Judge Morrison, speaking for the Superior Court, said at page 414:

"It is well settled that when a tax is clearly imposed by a general act, anyone claiming exemptions must show clearly that such exemption exists. The principle as stated in Cooley on Taxation, 146, is this: 'The intention to exempt must in any case be expressed in clear and unambiguous terms; taxation is the rule, exemption is the exception. All exemptions are to be strictly construed. They embrace only what is within their terms'. To the same effect is Academy of Fine Arts v. Philadelphia County, 22 Pa. 496, where it is said: 'No interests falling within the general description of taxable property, can claim exemption from bearing their just proportion of public charges, unless the exemption be so clearly expressed in

the statute as to admit of no other construction.' See Commonwealth v. Light & Power Co., 145 Pa. 105."

We are of the opinion that the appellants have failed to meet the burden which is placed upon them. They have not convinced us that the legislature intended to exempt these bonds from the operation of the Act of 1919 and its amendments. It is reasonable to suppose that if the legislature had intended to exempt these bonds from inheritance taxation it would not have left this intention to uncertain inferences, but would have expressed it in unequivocal terms: Commonwealth v. Lowry-Rodgers Co., supra. This is especially so in view of the fact that the Act of 1931, supra, construed in the manner requested by the appellant, would accord to the bonds of the Delaware River Joint Commission an immunity from taxation not possessed by any other securities in Pennsylvania. Even bonds of the Federal Government have been held subject to inheritance tax: Strode v. Commonwealth, 52 Pa. 181 (1866) ; Clymer v. Commonwealth, 52 Pa. 185 (1866). The reasoning of the court in those cases has strong application to the problem presented in the present appeal. The exceptions are therefore dismissed and the opinion confirmed absolutely.